## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NADIA ROBERTS** | ) | |
| **Parent and next friend of N.R., a minor** | ) | **Civ. A. No:** |
| **and N.R. individually** | ) | |
| **3452 24ᵗʰ Street SE** | ) | |
| **Washington, DC 20020** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA** | ) | |
| **A Municipal Corporation** | ) | |
| **One Judiciary Square** | ) | |
| **441 Fourth Street, NW** | ) | |
| **Washington, D.C. 20001** | ) | |
| | ) | |
| **to serve:** | ) | |
| | ) | |
| **MURIEL BOWSER, Mayor** | ) | |
| **District of Columbia** | ) | |
| **441 4ᵗʰ Street, N. W.,   6ᵗʰ Fl** | ) | |
| **Washington, D.C. 20004** | ) | |
| | ) | |
| **KARL A. RACINE** | ) | |
| **Attorney General** | ) | |
| **441 4ᵗʰ Street, N. W.,   6ᵗʰ Fl** | ) | |
| **Washington, D.C. 20004** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT & INJUNCTIVE AND OTHER RELIEF

COMES NOW, the Plaintiffs Nadia Roberts and her minor child N.R., by and through counsel,

James E. Brown & Associates, P.L.L.C., and respectfully unto this Honorable Court state as follows:

1

## INTRODUCTION

1.   This is a claim for injunctive and declaratory relief brought under the Individuals with

Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"). The Plaintiff seeks a judgment 1)

declaring that the District of Columbia Public Schools ("DCPS") violated the IDEA and denied N.R.

a free appropriate public education ("FAPE"), 2) Ordering the Defendant to amend N.R.'s IEP and

provide an appropriate placement, and 3) ordering compensatory education for N.R.

2.   Specifically, Ms. Roberts asserts that N.R. was denied a FAPE when the Defendant failed to

develop an appropriate IEP for him in September 2017 and failed to implement his January 2017 IEP

between the date it was developed and December 2017.


## JURISDICTION AND VENUE

3.  This court has jurisdiction pursuant to:

    a.  The Individuals with Disabilities Educational Improvement Act, 20 U.S.C. § § 1400-1461

       ("IDEIA"), and pendent jurisdiction pursuant to D.C. Mun. Regs. Title 5 § § 3000.1 – 3701.3

       (2003);

    b.  Declaratory Relief is authorized by 28 U.S.C. § § 2201 and 2202.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5.  On January 4 and January 8, 2018 the Plaintiffs participated in an administrative hearing of the

claims made in this Complaint conducted by the District of Columbia Office of the State

Superintendent of Education ("OSSE") Office of Dispute Resolution. In an order dated January 21,

2018 the Hearing Officer found against the Plaintiff and denied her the relief requested in this

Complaint. *See* Exhibit 2.

## PARTIES

6.  Plaintiff Nadia Roberts is the parent of her minor child, N.R., a student who has been deemed eligible to receive special education and related services from the District of Columbia Public Schools ("DCPS").

7.  Plaintiff N.R. is a minor child who has been deemed eligible to receive special education and related services from DCPS.

8.  Plaintiffs, at all times relevant to this action, have been residents of the District of Columbia.

9.  That Defendant is a municipal corporation that receives federal funds pursuant to the IDEA, *see* 20 U.S.C. § 1411, in exchange for providing a free and appropriate public education ("FAPE"), and is obliged to comply with the applicable federal regulations and statutes, including but not limited, to IDEIA. *See also* § 1412(a)(1)(A).

## FACTUAL BACKGROUND

10. N.R. is a nine (9) year old child who resides in the District of Columbia with his parent, Nadia Roberts and currently attends LaSalle Backus Educational Campus where he is enrolled in the fourth (4th) grade.

11. Throughout kindergarten, first and second grade, N.R.'s scores on standardized testing such as the DIBELS and I-READY testing also indicated that the he was consistently performing far below grade level in reading and mathematics, His reading TRC scores remained at a PC level into second grade. This is below expectations even for a student at the beginning of kindergarten and his I-Ready testing indicted that he was still performing at a kindergarten level in second grade.

12. On or about August 19, 2016, a psychological evaluation was completed for N.R. that found that the he was performing significantly below grade and age level in reading, mathematics, and writing, and that he struggled significantly with handwriting and visual perceptual skills.

13. In addition, he was exhibiting significant behavior concerns in the class and engaged in such behaviors as refusing to sit as his desk, fighting with classmates, disrupting the class, and refusing to follow directions. The psychological evaluation recognized these social emotional functioning concerns but surmised that the behavior difficulties the student was experiencing could well be a product of his academic struggles.

14. These behavioral issues are also documented in a functional behavioral assessment (FBA) that was conducted in June 2016. It found that behavior concerns that were occurring at school, including but not limited to, aggressive behaviors that were post prevalent during non-structured times such as lunch and recess.

15. In September 2016, a meeting to determine eligibility for special education and related services was held wherein N.R. was determined eligible for special education services as a student with a learning disability, and his initial individualized Education Program (IEP) was developed.

16. This IEP only provided N.R. with 5 hours of specialized instruction inside the general education setting (push-in instruction), 7 hours of specialized instruction outside the general education setting (pull-out instruction) and 120 minutes of BSS. The parent disagreed with the September 8, 2017, IEP in that she believed that he required more instructional support in light of his deficits in reading and writing which impaired his ability to access the curriculum.

17. In light of his behaviors in the school setting, the school also developed a Safety plan for N.R. on or about September 22, 2016.

4

18. On or about September 30, 2016, an Administrative Due Process Complaint was filed to address whether or not the Defendant had denied the student a FAPE by failing to timely evaluate and identify the student as eligible for special education and by failing to develop an appropriate IEP.

19. A Hearing Officer's Determination (HOD) was issued on or about December 24, 2016, that made findings that N.R. had been denied a FAPE. Specifically, it found that the Defendant should have identified N.R. as a student with a disability by March 2015, and that his initial IEP did provide sufficient hours of specialized instruction.

20. The December 2016 HOD awarded compensatory education for those denials of FAPE and ordered DCPS to provide all academic instruction that involves reading and writing with a special education teacher in the room.

21. Following the issuance of the HOD, a meeting to revise the N.R.'s IEP consistently with that HOD.

22. At that meeting, the Defendant agreed to add occupational therapy to the student's IEP and the occupational therapist who participated in the meeting also agreed to conduct further observations of the student to add additional accommodations and a sensory diet to his program.

23. At the January 24, 2017, meeting, though the parent was advocating for an increase in resource classes and outside of general education specialized instruction, DCPS only agreed to provide N.R. with 16 hours of specialized instruction inside the general education setting and 7 hours outside of the general education setting.

24. At the January 24, 2017, meeting it was also shared by the school that there was reading and writing in all of the N.R.'s core academic classes ( ELA, Mathematics, History, and Science) and also that he had 3 "specials" (Library, PE, and Spanish) and that there was reading and writing involved in both Library and Spanish.

25. At the January 24, 2017, meeting independent evaluations were requested.

26. A comprehensive psychological evaluation was conducted by Dr. Helen DeVinney, PsyD on or

about May 30, 2017, and reviewed by the IEP Team at a meeting held on September 26, 2017, at

LaSalle Elementary School.

27. As part of the independent psychological evaluation teachers were interviewed and N.R.'s special

education teacher, Ms. Trecho indicated that she was pushing into his classes for only 6 hours a

week and providing pull-out for 7 hours per week whereas the student's IEP amended in light of the

December 24, 2016 HOD required 16 hours of push in per week.  Ms. Trecho also shared that she

did not believe that his present classroom was suitable for him nor did she believe that the school's

BES program or ID program would be appropriate.

28. According to the cognitive testing completed as part of N.R.'s independent psychological evaluation,

his Full Scale IQ was 93 on the Wechsler Intelligence Scale for Children, Fifth Edition ( WISC-V)

which placed his cognitive functioning in the average range, however, on academic achievement

testing conducted ( Woodcock Johnson Test of Achievement, Fourth Edition (WJ0IV) his scores

were extremely limited with standard scores in Broad Reading of 56, Broad Mathematics of 73, and

Broad Written Language of 59.

29. Dr. DeVinney utilized the BASC-3 to assess the N.R.'s social emotional functioning and it yielded

scores in the clinically significant range for rating scales administered to the teachers in the areas of

externalizing problems, as well as, depression, aggression, conduct problems and adaptability.

30. Dr DeVinney diagnosed the N.R. with a specific learning disability (SLD), an unspecified

Neurodevelopmental Disorder and an other health impairment (OHI). She recommended placement

in a smaller classroom setting where staff were trained to work with children who have similar types

6

of neuro-cognitive struggles, weekly psychotherapy, play therapy, and a social skills group, as well as, involving him in activities to help improve his confidence.

31. At the September 26, 2017, meeting, the issue of the school's failure to implement his IEP during the 2016-2017 school year was discussed and the school also shared that for the current school year, N.R. was not receiving specialized support in any of his "specials" such as Art, Music, Spanish, and Library and that all of these classes had a theoretical component that would require reading and writing at times.

32. At the September 26, 2017, meeting, it was shared that the N.R. was having behavior issues in less structured times such as recess, and will shut down in the classroom when he is unable to complete assignments. The behaviors exhibited by him are significant and the DCPS team agreed that his BIP needed to be implemented on or before October 5, 2017, however, to date; the BIP has not been updated.

33. On behalf of the N, a full time program, including an entirely out of general education setting, for students with learning disabilities was requested.

34. On October 25, 2017, Ms. Roberts filed the underlying due process complaint, alleging that the Defendant denied N.R. a FAPE when it failed to propose an appropriate IEP or placement on September 26, 2017, failed to fully implement his IEP, failed to conduct an assistive technology evaluation, failed to develop or update a behavioral intervention plan following a September 2017 functional behavioral assessment, and failed to provide full access to educational records.

35. At hearing, Janice Trecho, N.R.'s special education teacher during the 2016-2017 school year testified concerning implementation of his IEP.

36. Ms. Trecho also provided a schedule of the services she offered to N.R. which was disclosed by the Defendant.

37. That schedule indicated that N.R. received pul-lout instruction from 1:40-3:15 Monday, Tuesday and Wednesday, a total of 4.75 hours per week, or 67% of N.R.'s required services.

38. On cross examination, Ms. Trecho initially confirmed that she was pulling N.R. out between four and five hours.

39. In spite of this, Ms. Trecho also testified that she also provided pull-out services from 1:40-2:10 on Thursdays and Fridays.

40. Even considering these additional claimed services, Ms. Trecho only testified that she provided 5.75 hours of N.R. required seven hours of pull-out instruction per week, a short fall of approximately 20%.

41. With regard to push-in services, Ms. Trecho's reflected that she did not provide services during the time between 11:55 a.m. and 12:40 p.m., although she admitted he was in academic classes during that time.

42. Further, the DeVinney Evaluation reported, based on an interview with Ms. Trecho, that she pushes in 6 hours per week and pulls out, 7 hours per week, substantially less than called for by his IEP.

43. In addition, N.R.'s math teacher told the evaluators during the DeVinney evaluation that there was not much push in services in her class; despite this, Ms. Trecho claimed that she pushed in at least one hour per day every day for N.R.'s math class.

44. During the 2017-2018 school year, special education services for N.R. were provided by Ms. Denise Moore.

45. At hearing, she testified that she does not push in or pull out for any N.R.'s specials.

46. She further testified that she is not with him for the full duration of his reading or math classes.

8

47. At hearing, Dr. DeVinney testified concerning her recommendation that N.R. be placed in a school that could better meet his needs.

48. She explained that he has significant processing deficits that even many special education teachers may not be adequately prepared to address.

49. Instead, she recommended placing him in a school which was prepared to meet these needs, including a very small setting.

50. Despite this evidence, the Hearing Officer decided against Ms. Roberts on each of the alleged issues.

51. Specifically, he found that ""no one disagreed that [N.R.] made insufficient progress at [LaSalle Backus EC]," but instead of determining whether that the September 26, 2017 IEP was therefore inappropriate, determined "whether DCPS took remedial steps necessary to propose an appropriate IEP on 12/11/2017. *See* Exhibit 2.

52. Further, in spite of evidence that N.R. IEP was not implemented, in that he did not receive all the required hours of instruction and did not receive all academic instruction requiring reading and writing with a special education teacher in the room, the Hearing Officer did not find a denial of FAPE on this issue.

## COUNT I
### (Failure to Develop an Appropriate IEP on or after September 26, 2017)

53. Plaintiffs reincorporate paragraphs 1-52.

54. On September 26, 2017, the Defendant developed an IEP which was not reasonable calculated to enable N.R. to make educational progress in light of his circumstances.

55. In his HOD, the Hearing Officer determined that "no one disagreed that [N.R.] made insufficient progress at [LaSalle Backus EC]," but instead of determining whether the challenged failure to

revise N.R.'s IEP in September 26, 2017 was appropriate, he determined "whether DCPS took remedial steps necessary to propose an appropriate IEP on 12/11/2017." *See* Exhibit 2.

56. The IEP developed in December 2017 was developed well after Ms. Roberts's request for changes to N.R.'s educational program and the Defendant's review of the independent psychological in September 2017. Indeed, these changes were not made to N.R.'s IEP until after Ms. Roberts filed a due process complaint and less than a month before hearing.

57. Despite this, the Hearing Officer did not make a determination as to whether the Defendant should have provided a revised IEP in September 2017, as asserted by Ms. Roberts. Instead, he only opined about the adequacy of the December 2017 IEP and placement. This was in error.

58. In addition, the Hearing Officer erred in finding that the December 2017 IEP was appropriate; the evidence at hearing, including Dr. DeVinney's evaluation indicated that he required a more restrictive setting than the Defendant offered to him.

**COUNT II**
**(Failure to Implement N.R.'s January 2017 IEP)**

59. Plaintiffs reincorporate paragraphs 1-58.

60. From January 24, 2017, N.R.'s IEP called for him to receive sixteen (16) hours per week of push-in instruction and seven hours per week of pull-out instruction.

61. In addition, that IEP was developed pursuant to an HOD which called for N.R. to receive all academic instruction that involves reading and writing with a special education teacher in the room.

62. The evidence at hearing indicated that this was not followed and that N.R. did not receive the required hours of instruction and did not receive instruction, including periods of instruction in math and reading as well as specials which called for reading and writing, with a special education teacher in the room as required by the IEP.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court:

1) Reverse the January 21, 2018, HOD and find that N.R. was denied FAPE on each of the alleged issues.

2) Order the Defendant to amend N.R.'s IEP: 1) to provide placement in a therapeutic program where all services are provided outside of general education, 2) update goals, performance data, and baseline data, and 3) provide an appropriate location of services

3) Order the Defendant to provide compensatory education for this denial of FAPE.

4) In the alternative, remand the case to the Hearing Officer for consideration of the appropriate compensatory education.

5) Award the Plaintiff attorneys' fees and costs for this action;

6) Award any other relief the Court deems appropriate.

**Respectfully submitted,**

ROBERT W. JONES, Bar No. DC997776
Associate Attorney
James E. Brown & Associates, PLLC
1220 L Street, 7th Floor
Washington, D.C. 20005
(202) 742-2000 (voice)
(202) 742-2098 (fax)
**Attorneys for Plaintiffs**